IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| 75-80 PROPERTIES, LLC, *et al.,* | * | |
| Plaintiffs, | * | |
| v. | * | |
| BOARD OF COUNTY | * | Civil Action No.: RDB 09-2977 |
| COMMISSIONERS OF FREDERICK | | |
| COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs 75-80 Properties, LLC and Payne Investments, LLC (collectively, "Plaintiffs"),

filed this action against the Board of County Commissioners of Frederick County, Maryland

("the Board"), the Frederick County Planning Commission ("the Planning Commission"), 75-80

Dragway, Inc., and Wilcom Family Partnership (collectively, "Defendants") in the Circuit Court

for Frederick County, Maryland.  In the Complaint, Plaintiffs allege seven causes of action and

seek $50 million in damages based upon allegations that Defendants acted in bad faith and

breach of contract with respect to Plaintiffs and their development project.  Plaintiffs assert three

claims for equitable relief:  declaratory judgment (Count I), a writ of mandamus (Count II), and

injunctive relief (Count VII).  In addition, Plaintiffs plead four causes of action:  breach of

contract (Counts III and IV), violation of Due Process (Count V), and violation of Equal

Protection (Count VI).  Plaintiffs bring each claim under Maryland state law, although in Counts

V and VI Plaintiffs assert Due Process and Equal Protection violations under both the Maryland

Constitution and the Fourteenth Amendment to the United States Constitution.  Accordingly,

Defendants the Board and the Planning Commission submitted a Notice of Removal to this Court

(Paper No. 1) alleging federal question jurisdiction under 28 U.S.C. § 1343, and requesting that

this Court retain supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Among the four motions now pending before this court is Plaintiffs' Motion to Remand (Paper

No. 22). The parties have fully briefed the issues and oral argument was presented at a hearing

before this Court on March 2, 2010. For the reasons stated below, Plaintiffs' Motion to Remand

(Paper No. 22) is GRANTED as to the state law claims set forth in Counts I, II, III, IV, and VII

and partially set forth in Counts V and VI, but DENIED as to the federal constitutional claims

partially set forth in Counts V and VI, which shall be stayed pending resolution and final

determination of the state claims by the Circuit Court for Frederick County. Additionally,

Plaintiffs' request for costs and fees is DENIED.

## BACKGROUND

Plaintiffs 75-80 Properties, LLC and Payne Investments, LLC are the owners of two

large properties on the west side of Route 75 in Frederick County, Maryland ("the Property").

Compl. ¶¶ 10, 11. In June 2004, Defendant the Board of County Commissioners of Frederick

County approved and adopted the Urbana Regional Growth Plan ("the Plan") which enabled

Plaintiffs to request a Planned Unit Development ("PUD")[1] zone for the Property. *Id.* ¶ 16. On

November 9, 2004, in reliance on the Plan, Plaintiffs contracted to purchase additional land from

Defendants 75-80 Dragway, Inc. and Wilcom Family Partnership, which ultimately expanded the

size of the Property to over 400 acres. *Id.* ¶¶ 10, 19, 20.

In September 2005, Plaintiffs filed a PUD Phase I rezoning request for the Property. *Id.* ¶

20. On February 15, 2006, the Planning Commission recommended approval. *Id.* ¶ 23. On

---

[1] A Planned Unit Development is defined in the Frederick County Code as "a floating zoning district approved by the County Commissioners which allows a variety of uses and dwelling unit types in accordance with an approved plan and schedule of improvements." Fred. Co. Code § 1-20-5(B).

September 28, 2006, the Board approved and executed an Ordinance reclassifying the Property to PUD.  *Id.* ¶ 24.  The Ordinance determined that Plaintiffs would continue the development process and pursue PUD Phase II and Adequate Public Facilities Ordinance ("APFO")[2] approval. *Id.* ¶ 25.  The Ordinance contained nineteen conditions Plaintiffs had to fulfill, including:

> 4.  No lots shall be recorded within the PUD until the Bush Creeker Interceptor (Middle Phase) sewer line is available for service to the project, and the Ballenger Creek/McKinney Wastewater Treatment Plant has capacity available on a "first come/first served" basis.
> 5.  No lots shall be recorded within the PUD until provision for public water service is made and is available for service to the project via a connection to the East County Loop water main.

*Id.* ¶ 28.  Plaintiffs contend that an implied condition of the Ordinance was that the Board would authorize the construction of an appropriately sized water and sewer line for the Property at the cost of the Plaintiffs.  *Id*. ¶ 29.

Between April 2007 and January 2008, Plaintiffs worked closely with the Planning Commission and the Board, and on January 14, 2008, Plaintiffs filed a Development Option Letter ("DOL"), which reiterated that Plaintiffs would be responsible for the construction of the sewer line, with the size determined by the Department of Water and Sewer Management.  *Id*. ¶¶ 32 - 36.   On January 16, 2008, the Planning Commission granted conditional Phase II and APFO approval for the Property, subject to the execution of a Letter of Understanding ("LOU")[3] by the Planning Commission memorializing the terms and conditions of the PUD Phase II and APFO approvals.  *Id.* ¶¶  37 - 39.

---

[2] Adequate Public Facilities Ordinances are designed to assure that infrastructure necessary to support proposed new development is built concurrently with, or prior to, that new development. APFOs are timing devices that can be a useful tool for managing urban growth. *See* Fred. Co. Code § 1-20-4.

[3] As defined in the Frederick County Code, an Adequate Public Facilities Letter of Understanding is a "letter from the Planning Commission to the developer which sets forth all terms, conditions and restrictions which must be satisfied for a finding of adequacy."  Fred. Co. Code § 1-20-5(B).

On or about August 21, 2008, Plaintiffs submitted an agreement to pay for the costs of increasing the size of the sewer line pursuant to an assessment by the Department of Water and Sewer Management.  *Id.* ¶ 42.  However, on or about October 16, 2008, the Board rejected this agreement.  *Id.*  Plaintiffs were unable to procure the executed LOU from the Planning Commission for over a year.  *Id.* ¶ 45.  On May 26, 2009, the Planning Commission explained that the LOU would not be executed because the Board refused to allow Plaintiffs to increase the size of the sewer line.  *Id.* ¶ 45.  On June 15, 2009, Plaintiffs received notice that the Board planned to downzone the Property from PUD, thereby making completion of the development impossible.  *Id.* ¶ 47.

During this time, the Planning Commission granted Monocacy Ventures, LLC – owners of a development project adjacent to the Property – PUD Phase I, PUD Phase II and APFO approval.  *Id.* 54.  Due to the proximity and similarity of Monocacy Ventures' development project to Plaintiffs' development project, the Planning Commission initially contemplated that the two projects would share costs and uses of some infrastructure and public facilities.  *Id.* ¶ 55.  Unlike Plaintiffs, however, Monocacy Ventures was granted an executed LOU on February 2, 2007, and therefore was able to move forward with its development.  *Id.* ¶ 56.

Plaintiffs allege that the Ordinance was an effective contract between the parties, and that Defendants breached that contract in bad faith.  *Id.* ¶ 1.  Plaintiffs contend that the Ordinance was supported by consideration since it stated express conditions with which the Plaintiffs had to comply and imposed implied conditions to be completed by the Board and Planning Commission.  *Id.* ¶ 26.  Plaintiffs maintain that they paid consideration for the Ordinance by, among other things, spending significant amounts of money to complete PUD Phase I and reach the point of the issuance of the Ordinance.  *Id.* ¶ 27.  Plaintiffs assert that they relied on the

Ordinance to their detriment and spent further funds to pursue PUD Phase II and APFO approval. *Id.* Plaintiffs allege that the PUD Phase II and APFO approvals contained additional implied conditions that the Board and Planning Commission would authorize the construction of an appropriately-sized sewer line at the cost of the Plaintiffs, and would not downzone the Property from PUD to a lesser classification. *Id.* ¶ 40. Plaintiffs also contend that Defendants' granting an LOU to Monocacy Ventures while denying an LOU to Plaintiffs resulted in a violation of Plaintiffs' Due Process and Equal Protection rights.

On October 2, 2009, Plaintiffs filed this action against the Planning Commission, the Board, and Interested Defendants 75-80 Dragway, Inc. and Wilcom Family Partnerships in the Circuit Court for Frederick County, Maryland. Plaintiffs assert seven claims in their Complaint, all of which are under Maryland state law. However, in Counts V and VI, Plaintiffs allege that the Defendants' refusal to execute their LOU while granting a substantially similar LOU to Monacy Ventures represents violations of Due Process and Equal Protection under both the Maryland Constitution and the United States Constitution. Compl. ¶ 58. Accordingly, on November 6, 2009, Defendants the Board and the Planning Commission submitted a Notice of Removal to this Court (Paper No. 1) alleging federal question jurisdiction under 28 U.S.C. § 1343 and requesting that this Court retain supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. On November 20, 2009, Plaintiffs filed the instant Motion to Remand (Paper No. 22).

## STANDARD OF REVIEW

Except as otherwise provided by law, a defendant may remove a state civil action to a federal court where the action is one "of which the district courts of the United States has original jurisdiction." 28 U.S.C. § 1441(a) (2009). The burden of establishing federal

jurisdiction is placed upon the party seeking removal, and removal jurisdiction is strictly

construed. *Mulcahy v. Columbia Organic Chemicals Co*., 29 F.3d 148, 151 (4th Cir. 1994).  On a

motion to remand, a court must "strictly construe the removal statute and resolve all doubts in

favor of remanding the case to state court." *Richardson v. Phillip Morris, Inc*., 950 F. Supp. 700,

701-02 (D. Md. 1997) (citation omitted); *see also Mulcahy*, 29 F.3d at 151.  If federal

jurisdiction is doubtful, the United States Court of Appeals for the Fourth Circuit favors remand

of cases turning primarily on questions of state law because "needless decisions of state law [by

federal courts] should be avoided both as a matter of comity and to promote justice between the

parties, by procuring for them a surer-footed reading of applicable law."  *United Mine Workers v.

Gibbs*, 383 U.S. 715, 729 (1966).

## ANALYSIS

Plaintiffs contend that this Court should decline to exercise supplemental jurisdiction

over Plaintiffs' state law claims by invoking its discretion under 28 U.S.C. § 1367(c), and

subsequently should remand the entire case.[4]

## I.      Remand of State Law Claims

Under 28 U.S.C. § 1367(c), a district court may, in its discretion, decline to exercise

supplemental jurisdiction over a related state law claim where the claim "raises novel or complex

issues of state law," or where the state claim "substantially predominates over the [federal]

---

[4] After oral argument, Plaintiffs submitted a Post-Hearing Memorandum (Paper No. 33)
suggesting that under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Quackenbush v. Allstate
Ins. Co.*, 517 U.S. 706 (1996), this Court stay the issues relating to damages and remand the
remaining issues to the Circuit Court for Frederick County.  However, because this Court
declines to exercise supplemental jurisdiction over the state law claims, it need not reach the
complicated procedural issues raised by that line of cases. *See Nelson v. City of Rochester*, 492
F.Supp.2d 282, 289, n.4 (W.D.N.Y. 2007) (holding that the decision to remand the state claims
under 28 U.S.C. § 1367 rendered it unnecessary for the Court to consider plaintiff's abstention
arguments); *see also West Coast, Inc. v. Snohomish County*, 33 F.Supp.2d 924, 926 (W.D. Wash.
1999)(same).

claim." 28 U.S.C. § 1367(c).  A court may decline to exercise jurisdiction over supplemental

state law claims "[d]epending on a host of factors including the circumstances of the particular

case, the nature of the state law claims, the character of the governing state law, and the

relationship between the state and federal claims." *City of Chicago v. Int'l College of Surgeons*,

522 U.S. 156, 173 (1997).  When the exercise of this discretion involves the additional question

of whether to remand the case to State court, the federal court should consider "principles of

economy, convenience, fairness, and comity."  *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611,

617 (4th Cir. 2001) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

Deciding whether to exercise supplemental jurisdiction "is a responsibility that district courts are

duty-bound to take seriously." *Acri v. Varian Associates*, 114 F.3d 999, 1001 (9th Cir. 1997).

### A.  Novel and Complex Issues of State Law Are Present Under 28 U.S.C. § 1367(c)(1)

It is well-settled in the Fourth Circuit that claims involving Maryland zoning and land use

issues require application of complex local regulations and are therefore uniquely suited to

adjudication in a state forum.  S*ee Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 67

(4th Cir. 1992) (resolving routine land-use disputes "is simply not the business of the federal

courts."); *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 945 F.2d

760, 763-64 (4th Cir. 1991) (declining to address annexation and sewer services issues because

they involve complicated matters of state and local land use law); *Caleb Stowe Associates, Ltd. v.

County of Albemarle*, 724 F.2d 1079, 1080 (4th Cir. 1984).  As the Fourth Circuit explained in

*Browning-Ferris, Inc. v. Baltimore County*, 774 F.2d 77, 79 (4th Cir. 1985), "land use questions

. . . are the peculiar concern of local and state governments, and traditionally, federal courts have

not interfered with state courts in the area of land use policy."  The Fourth Circuit's view that

local land use regulations and their application are issues which properly belong in state court

represents a clearly articulated policy which takes into consideration concerns of comity and judicial economy.  Thus, District Courts are obliged to follow the Fourth Circuit's clear guidance with respect to such cases absent compelling reasons to the contrary.  *See, e.g., Gold Leaf Land Trust v. Bd. of Supervisors*, 2002 WL 982375, at *4 (W.D. Va. 2002) (following Fourth Circuit precedent and declining to exercise supplemental jurisdiction over local land use claims because the case "involves a uniquely state law issue which the General Assembly never fathomed would be scrutinized in a federal forum.").

Complex issues of local zoning and land use law are central to Plaintiffs' claims in this case.  The thrust of Plaintiffs' claims is that Defendants breached their obligations under the Ordinance.  The parties dispute not only whether a breach occurred, but also whether or not the Ordinance even constitutes a contract.  Deciding this issue compels evaluating and applying Maryland local zoning and land use regulations as they pertain to contract disputes in that context.  For example, Defendants argue that the Ordinance in this case is distinguishable from the ordinance that was construed as a contract in *Mayor and City Council of Baltimore v. Crane*, 277 Md. 198 (1976).  Distinguishing *Crane* necessitates differentiating between the scope and effect of an ordinance created pursuant to the land use and zoning regulations of the City of Baltimore, and the implications of the Ordinance in this case, which was created pursuant to the regulations of Frederick County.  This is precisely the kind of analysis that the Fourth Circuit has held is best completed by state courts.

Plaintiffs also raise novel questions that could potentially impact the scope of a recent Maryland Court of Special Appeals decision, *County Commissioners v. Forty West Builders, Inc.*, 178 Md. App. 328 (Md. Ct. Spec. App. 2008).  In *Forty West*, the County Commissioners for Carroll County, Maryland, granted Forty West, a developer, certificates indicating that it had

satisfied certain requirements to support its subdivision developments.  After receiving these certificates, Forty West expended millions of dollars to acquire property, which it began to develop at considerable cost.  Two years later, Carroll County repealed the law under which the certificates were issued for the projects, and enacted stricter requirements that Forty West could not meet.  Consequently, the developer brought suit against Carroll County for breach of contract.  The Maryland Court of Special Appeals ultimately affirmed that the certificates were enforceable as contracts, and that the County breached its obligations as to them.

As in *Forty West*, Plaintiffs argue that the Ordinance vested contractual rights, that Defendants infringed on those rights by creating stricter requirements Plaintiffs could not meet, and by refusing to execute the Letter Of Understanding.  However, this case also requires an examination of novel questions that were not addressed in *Forty West*:  First, whether the alleged breach of the implied conditions of the Ordinance infringes Plaintiffs' rights and give rise to a cause of action.  Second, whether Defendants' refusal to sign the LOU can, by itself, preclude a cause of action for breach of contract by Plaintiffs.  Third, whether the Defendants can assert their own impossibility defense to the breach of contract claim by making satisfaction of one of the conditions of the Ordinance impossible.  As the Second Circuit explained in *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998), "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts."  This case appears to involve a number of issues that were not addressed in *Forty West*, and have not been determined elsewhere.  Given the Fourth Circuit's guidance, the complex issues of state law involved, and the novel questions

implicating state law, this Court declines to exercise supplemental jurisdiction over the state law claim pursuant to its discretion under 28 U.S.C. 1367(c)(1).

### B.      State Claims Predominate Under 28 U.S.C. § 1367(c)(2)

Alternatively, this Court may also decline to exercise supplemental jurisdiction over the state law claims in an action if the state component of the case "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). A federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues substantially predominate over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Plaintiffs assert seven claims, all of which are brought under Maryland law. The only federal claims Plaintiffs assert – violations of Equal Protection and Due Process under both the United States and Maryland Constitutions – are merely the federal counterparts to Plaintiffs' state causes of action. Given that all of Plaintiffs' claims are brought under Maryland law, and that the federal claims were essentially tacked on, Plaintiffs' state law claims substantially predominate over the federal claims asserted. Furthermore, this Court finds that the interests of fairness and judicial economy are in no way compromised by a remand so that the state court can hear the remaining claims. Thus, this Court declines in the alternative to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. 1367(c)(2). Accordingly, Plaintiffs' state law claims are remanded to the Circuit Court for Frederick County.

## II.      Federal Claims

Plaintiffs contend that because their state claims predominate, the entire matter – including the federal claims – should be remanded. Defendants removed this action to this Court

under 28 U.S.C. 1441(a), which provides that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, *may remand all matters in which State law predominates*." (emphasis added).  Since Plaintiffs pled federal claims over which this Court has original jurisdiction in Counts V and VI, this action was properly removed under § 1441(a).[5]  *See Ward v. Alternative Health Delivery Systems, Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("When the defendants filed their notice of removal, plaintiff's complaint did include two federal claims on its face. Thus, the action was properly removed."); *Decatur Memorial Hosp. v. Connecticut General Life Ins. Co*., 990 F.2d 925, 927 (7th Cir. 1993) ("The removal was proper, because the complaint pleaded a federal claim.").

As the plain language of the statute explains, this Court may only remand the state law claims.[6]  Thus, this Court is not permitted to remand a federal claim, even when state law claims predominate the action.  *See Baker v. Kingsley,* 387 F.3d 649, 656-57 (7th Cir. 2004) ("It is an abuse of discretion for a district court to remand a federal claim that is properly before it."); *Green v. Ameritrade, Inc*., 279 F.3d 590, 596 (8th Cir. 2002) ("[A] district court has no

---

[5] Plaintiffs contend that Defendants' Notice of Removal was procedurally defective because all served Defendants did not consent to removal.  Though all defendants must generally consent to removal of an action from state to federal court, the consent of a nominal or formal party is not required to properly remove a case. *See, e.g., Egle Nursing Home, Inc. v. Erie Ins. Group*, 981 F. Supp. 932, 933 (D. Md. 1997).  In this case, Defendants' Notice of Removal properly and explicitly stated that the action was removed without the consent of co-defendants 75-80 Dragway and Wilcom Family Partnership because they are merely nominal parties against whom no relief is sought in any cause of action.

[6] As the Supreme Court explained in *Quackenbush*, 517 U.S. at 716, which dealt with the related procedure of abstention, "We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  Accordingly, the Fourth Circuit has recognized that it may be appropriate to remand a plaintiff's state law claims and retain jurisdiction over his related federal claims "even where such parsing resulted in some bifurcation of proceedings between state and federal courts." *Johnson v. Collins Entertainment Co*., 199 F.3d 710, 727 (4th Cir. 1999).

discretion to remand a claim that states a federal question."); *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 787 (3rd Cir. 1995) (explaining that "nothing in § 1367(c) authorizes a district court to decline to entertain a claim over which it has original jurisdiction and, accordingly, that section clearly does not sanction the district court's remand of this entire case, including the federal civil rights claims, to the state court.").

It should be noted that if Plaintiffs wanted to avoid the possibility of having to litigate their claims in federal court, they were free not to assert any federal claims in their complaint. *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) ("[T]he plaintiff is master of his complaint[,] and [this] generally permits plaintiffs to 'avoid federal jurisdiction by exclusive reliance on state law.'" (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *Dunlop v. City of New York*, No. 06-CV-433, 2006 WL 2853972, at *3 (S.D.N.Y. Oct. 4, 2006) ("Plaintiff included federal claims in his Complaint, and therefore left himself wide open to removal.").  Even though Plaintiffs' two federal claims are virtually identical to their claims under the Maryland Constitution, this Court must nonetheless exercise its jurisdiction over them.  However, in the interests of comity and judicial economy, and to avoid the risk of inconsistent adjudications, this Court may and will stay the federal claims pending resolution of Plaintiffs' state law claims in state court.  *See West Coast, Inc. v. Snohomish County*, 33 F. Supp. 2d 924, 926 (W.D. Wash. 1999) (holding that simultaneously litigating state and federal issues in different forums may result in a "number of unfortunate occurrences").

## III.   Costs

Plaintiffs seek payment of just costs and expenses, including attorneys' fees, incurred as a result of removal.  However, as explained above, removal was proper and appropriate under this

Court's federal question jurisdiction, and this Court is retaining jurisdiction of Plaintiffs' federal claims.  Accordingly, Plaintiffs' request for costs and fees is denied.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs' Motion to Remand (Paper No. 22) is GRANTED as to the state law claims set forth in Counts I, II, III, IV, and VII and partially set forth in Counts V and VI, but DENIED as to the federal constitutional claims partially set forth in Counts V and VI, which shall be stayed pending resolution and final determination of the state claims by the Circuit Court for Frederick County.  Plaintiffs' request for costs and fees is DENIED.

A separate Order follows.


Dated: March 10, 2010                                       /s/_____
                                                           Richard D. Bennett
                                                           United States District Judge